IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 2018, et al. | : : : : | CIVIL ACTION |
| v. | : : | |
| JOSEPH R. BIDEN, et al. | : | NO. 21-5172 |

MEMORANDUM

Bartle, J.                                         April 12, 2022

This action challenges the legality of President Biden's Executive Order 14043 compelling federal employees in the executive branch to be vaccinated against COVID-19.

The plaintiffs are the American Federation of Government Employees Local 2018 and American Federation of Government Employees Council of Prison Locals 33 as well as individuals Michael Garcia and Kenneth Lazor. The latter are employees of the Federal Bureau of Prisons at the Federal Detention Center in Philadelphia.[1] In addition to the President, plaintiffs have sued Kiran Ahuja in her official capacity as Director of the United States Office of Personnel Management, Merrick Garland in his official capacity as Attorney General, and Lloyd Austin in his official capacity as Secretary of Defense.

---

1. The Federal Bureau of Prisons is part of the United States Department of Justice.

Plaintiffs seek injunctive relief to prevent enforcement of the President's Executive Order as well as compensatory damages.  They have also filed a motion for a preliminary injunction.  Defendants have countered with a motion to dismiss the amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and in the alternative under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

I

President Biden, asserting authority vested in him by the Constitution and by 5 U.S.C. §§ 3301, 3302 and 7301, issued Executive Order 14043, 86 Fed. Reg. 50,989, on September 9, 2021.  After referencing the Administration's policy to halt the spread of COVID-19, a highly infectious disease, the Executive Order cites to the finding of the Centers for Disease Control and Prevention "that the best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants is to be vaccinated."  It mandates that all employees in the executive branch be vaccinated against COVID-19 "subject to such exceptions as required by law" in order "to promote the health and safety of the Federal workforce and the efficiency of the

civil service." It further directs the Safer Federal Workforce Task Force[2] to implement a program for the required vaccinations.

The Task Force pursuant to the President's Executive Order issued Guidelines on October 5, 2021. The Guidelines required federal executive branch employees including the individual plaintiffs to be vaccinated by November 22, 2021. The deadline was later extended until early 2022. Those who failed to provide proof of vaccination or to obtain an exemption would be subject to discipline and ultimately to termination. On January 21, 2022, the United States District Court for the Southern District of Texas entered a nationwide preliminary injunction enjoining the enforcement of Executive Order 14043. See Feds for Med. Freedom v. Biden, Civ. A. No. 21-356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022), appeal filed (5th Cir. Jan. 26, 2022). While the Government appealed, the preliminary injunction remained in effect. See Feds for Med. Freedom v. Biden, 25 F.4th 354, 355 (5th Cir. 2022) (per curiam). On April 7, 2022, the Court of Appeals for the Fifth Circuit, with one judge dissenting, vacated the preliminary injunction and

---

2. President Biden established the Task Force with Executive Order 13991, 86 Fed. Reg. 7,045 (Jan. 20, 2021). It is comprised of various executive agency officials and is charged with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." Id. § 4(b), (e).

remanded the action to the district court with direction to dismiss for lack of subject-matter jurisdiction. Feds for Med. Freedom v. Biden, No. 22-40043, 2022 WL 1043909 (5th Cir. Apr. 7, 2022). The Court has currently scheduled the issuance of its mandate for May 31, 2022.

The amended complaint here contains seven counts.[3] It alleges that the Executive Order compels plaintiffs to engage in political speech in violation of the First Amendment, interferes with their free exercise of religion, and invades their right of privacy and bodily autonomy under the Fourteenth Amendment. Plaintiffs also aver that the Executive Order is an unfair labor practice and an ultra vires act by the President. The Executive Order, in plaintiffs' view, also constitutes the exercise of power by the President which Congress has not delegated to him. Finally, plaintiffs claim that the Executive Order was subject

---

3. The seven counts are titled as follows: Compulsion of Political Speech (Count I); Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (Count II); Violation of the Rights to Privacy and Body Autonomy Found in the Fourteenth Amendment to the United States Constitution (Count III); Unfair Labor Practices (Count IV); Ultra Vires Acts (Count V); Violation of Article I of the Constitution: Nondelegation (Count VI); and Violation of APA [The Administrative Procedure Act]: Arbitrary & Capricious (Count VII).

to review under the Administrative Procedure Act and is arbitrary and capricious.[4] See 5 U.S.C. § 706(2)(a).

The plaintiffs contend that they have "suffered public harassment, embarrassment, and shaming" by having to reveal their vaccination status, especially any opposition to vaccination. They also assert that despite their union membership they were never given an opportunity to negotiate in good faith with the Government concerning the vaccine mandate. While the Guidelines provide for religious and medical exemptions, the amended complaint alleges that "union members" (who are not named as plaintiffs) were arbitrarily denied those exemptions. Nonetheless, it is undisputed from official government records produced by defendants that the individual plaintiffs sought and were granted religious exemptions by the Federal Bureau of Prisons in December 2021 before they were named as plaintiffs in this lawsuit. As of this time, no federal employee has been disciplined or terminated as a result of the Executive Order.

II

The court first turns to the defendants' motion to dismiss all the claims, both constitutional and statutory, of

---

4. When the amended complaint refers to plaintiffs, it is not always clear whether it is speaking about the two union plaintiffs or its members generally or the two individual plaintiffs.

the individual plaintiffs for lack of subject-matter jurisdiction. The plaintiffs, of course, have the burden of proof to establish that the court has the power to hear their case. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

The defendants make either a facial jurisdictional attack or a factual jurisdictional attack on the various claims asserted in the amended complaint. To the extent they make a facial attack, the court must accept as true all well-pleaded facts but may also consider certain documents which are integral to or explicitly relied upon in the complaint or which are undisputedly authentic if plaintiffs' claims are based on the document. Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). With respect to a factual attack, the court must journey beyond the averments of the amended complaint and make findings of facts relevant to jurisdiction. Aichele, 757 F.3d at 358.

Defendants, in support of their factual attack, assert that the two individual plaintiffs lack standing to sue. Defendants rely on the undisputed affidavits and documents that these plaintiffs have received religious exemptions from the vaccination mandate of the Executive Order. As noted above, the

court has before it the official records of the Federal Bureau of Prisons granting each such an exemption in December 2021.

The power of the federal courts under Article III of the Constitution is limited to adjudicating only "cases" and "controversies." Id. at 356-57. To bring a case or controversy, a plaintiff must have standing, that is, must have suffered a concrete and particularized injury or is in imminent danger of suffering such an injury. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). Here the individual plaintiffs do not have standing. They have been granted a religious exemption. While it is always possible that the exemptions could be revoked, the fact remains that these plaintiffs have not incurred and are not in imminent danger of incurring an adverse employment action due to the President's Executive Order.

The claims of the individual plaintiffs will be dismissed for want of subject-matter jurisdiction.

Defendants also challenge subject-matter jurisdiction over the claims of the plaintiff unions seeking to represent their unnamed members. The Supreme Court allows an association to file suit on behalf of its members if it meets several requirements: (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests at stake are germane to the organization's purpose"; and (3) "neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit."[5] <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000).

The plaintiff unions do not allege that any of their members have been fired as a result of the Executive Order. They simply aver that federal agencies have "arbitrarily denied religious exemption applications from Plaintiffs' members, despite the fact that the members applying have longstanding, deeply felt and strongly held religious beliefs in opposition to vaccination for COVID-19."

The plaintiff unions cannot rest on the general allegations in the amended complaint in order to represent their members now that defendants have made a factual challenge to subject-matter jurisdiction. To meet their burden of proof, they must each name at least one member who has standing and

---

5. The third prong for associational standing, as noted above, requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Free Speech Coal., Inc. v. Att'y Gen. U.S.</u>, 974 F.3d 408, 421 (3d Cir. 2020) (quoting <u>Hunt v. Wash. State Apple Advert. Comm'n</u>, 432 U.S. 333, 343 (1977)). The Supreme Court has held that unlike the first two prongs which are jurisdictional, the third prong is not of constitutional dimension but one of "administrative convenience and efficiency." <u>United Food & Com. Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 555 (1996). The Court characterized this associational test as a "prudential one." <u>Id.</u> Plaintiff unions seek not only injunctive relief but also compensatory damages for their members. The court need not decide whether the unions can satisfy this prudential test to the extent they seek monetary relief.

present specific facts through affidavits or other evidence which support that standing. See Summers v. Earth Island Inst., 555 U.S. 488, 498-99 (2009); Lujan v. Defs. of Wildlife, 504 U.S. 555, 563 (1992). The plaintiff unions have come forward with no such evidence. As the Supreme Court has observed, the required specificity is critically important for several reasons. First, an organizational plaintiff is not representing itself but is seeking to represent someone else not before the court, that is, one or more of its members. Second, this specificity is necessary because the court has an independent responsibility to satisfy itself that it has subject-matter jurisdiction before proceeding further with the action. See Summers, 555 U.S. at 498-99. Mere allegations will not do.

Accordingly, the court does not have subject-matter jurisdiction over the claims of the plaintiff unions to the extent they are seeking to represent the interests of their members.

The defendants further argue that the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101 et seq., precludes this court from having subject-matter jurisdiction over the claims of the individual plaintiffs as well as the claims of members of the plaintiff unions. The CSRA is a comprehensive statute governing workforce disputes of federal civil service and other federal employees. See United States v. Fausto, 484 U.S. 439,

455 (1988). It contains, among other provisions, an "integrated scheme of administrative and judicial review" for major adverse employment actions. Id. at 445.

The defendants cite the Supreme Court's decision in Elgin v. Dep't of Treasury, 567 U.S. 1 (2012). There, the plaintiffs had been fired from their government jobs for failure to register as required under the Military Selective Service Act, 50 U.S.C. App. § 453. After losing before the Merit Systems Protection Board ("MSPB"), they brought suit in the District Court of Massachusetts alleging that the law that required them to be fired for failure to register was unconstitutional as well as discriminatory.

The Supreme Court held that the district court lacked subject-matter jurisdiction. The Court explained that the CSRA established a "comprehensive system for reviewing personnel action taken against federal employees." Id. at 5 (quoting Fausto, 484 U.S. at 455). It described the CSRA as an "integrated scheme of administrative and judicial review" for "aggrieved federal employees" to resolve even constitutional claims. Id. at 13. Under that scheme, employees must first appeal any adverse employment action to the MSPB where the employees are entitled to legal representation. They then have the right to appeal to the Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703. The Supreme Court ruled that

while the MSPB itself cannot decide constitutional issues, the Federal Circuit on appeal may do so.

In Elgin, the plaintiffs had been terminated from their positions prior to filing their lawsuit. Plaintiffs here seek to distinguish Elgin on the ground that they are seeking pre-enforcement relief, that is, relief before any adverse employment action takes place. This distinction is of no moment. The CSRA deals with pre-enforcement relief by providing that employees are entitled to notice, an opportunity to respond, legal representation, and written reasons supporting the employing agency's decision before it takes any adverse action. § 7513(b). Thereafter, employees may appeal to the MSPB and then to the Federal Circuit. § 7703.

The Supreme Court in Elgin has variously described the nature of the CSRA as comprehensive, detailed, elaborate, and integrated. It "foreclose[s] judicial review to employees to whom the CSRA denies statutory review" and "indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." 567 U.S. at 11. The Supreme Court reiterated that "'competitive service employees, who are given review rights by Chapter 75, cannot expand these rights by resort to' judicial review outside the CSRA scheme." Id. (quoting Fausto, 484 U.S. at 450 n.3). If employees are permitted to seek relief in the district court

-11-

prior to any adverse employment action, they will be circumventing this carefully crafted statutory scheme.  There will be a return to the old days before the CSRA with a patchwork of potentially inconsistent and duplicative judicial rulings.  Elgin, 567 U.S. at 14; Feds for Med. Freedom, 2022 WL 1043909, at *4.

As in Elgin, the employment issues here are not collateral to the CSRA scheme but are directly related to the question of continued employment.  Thus disgruntled federal civil service employees such as those involved here have certain due process rights under the CSRA before any adverse employment action is taken by their employing agencies.  If they seek relief, whatever it may be, they must proceed before the MSPB and then appeal to the Federal Circuit.[6]  This is so even if they are asserting constitutional or pre-enforcement claims.  They have no other pathway for relief.  See also Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994).  This conclusion comports with the recent decision of the Fifth Circuit.  See Feds for Med. Freedom, 2022 WL 1043909, at *5.

In sum, the CSRA precludes this court's subject-matter jurisdiction over the work-related claims of any civil service

---

6.  Under the CSRA, an employee may sue in the district court if he or she alleges discrimination, but only after proceeding before the MSPB.  See 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2); Elgin, 567 U.S. at 13.

employee.  Thus all claims by the individual plaintiffs and plaintiff unions on behalf of their members will also be dismissed for this reason.

### III

Finally, defendants argue that this court lacks subject-matter jurisdiction over the claims of the plaintiff unions to the extent they sue on behalf of their own interests and not those of their members.  This appears to be a facial attack on the amended complaint.  The defendants contend that the unions are required to pursue any such claims including the claim of an unfair labor practice under the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101 et seq., and bring those claims in the first instance before the Federal Labor Relations Authority ("FLRA").  If unhappy, they may appeal any FLRA decision to the Court of Appeals.

The decision of the Court of Appeals for the District of Columbia Circuit in American Federation of Government Employees v. Trump ("AFGE"), 929 F.3d 748 (D.C. Cir. 2019), is directly on point.  In that case, unions representing federal employees brought suit in the district court to enjoin certain aspects of various Executive Orders issued by the President regarding relations between the government and federal employees.  The action was filed before the Executive Orders took effect.

The Court of Appeals held that the district court did not have subject-matter jurisdiction.  The appellate court made it clear that the unions were instead required to follow the scheme of administrative and judicial review established under the FSLMRS.  The Court explained, as the defendants argue here, that the FSLMRS provides for administrative review of federal labor disputes by the FLRA and then for review by the Courts of Appeals.  5 U.S.C. § 7123(a).

The disputes subject to this scheme include alleged constitutional and "nationwide" violations and even disputes where the type of relief sought is not available.  It is the comprehensiveness of the statutory design under the FSLMRS and not the remedies available that is controlling.  The Court clarified that even if an issue could not be decided by the FRLA, it could still be raised on appeal.  AFGE, 929 F.3d at 758.  Citing the Supreme Court's decision in Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994), it held that district courts have no jurisdiction over pre-implementation review of Executive Orders.  Such review is encompassed under FSLMRS.

The Court of Appeals for the Second Circuit in a similar case involving Executive Orders has reached the same conclusion that the district court lacked subject-matter jurisdiction and has cited the above decision of the District of

Columbia Circuit.  <u>Serv. Emps. Int'l Union Local 200 United v. Trump</u>, 975 F.3d 150, 152 n.2 (2d Cir. 2020) (per curiam).

This court finds both decisions persuasive and will follow them.  The claims of the plaintiff unions brought in their own right will be dismissed for lack of subject-matter jurisdiction.

IV

This action will be dismissed in its entirety for lack of subject-matter jurisdiction.  Consequently, the court does not reach the merits of plaintiffs' claims, the plaintiffs' motion for a preliminary injunction, or the defendants' alternative motion to dismiss under Rule 12(b)(6) for failure to state claims upon which relief can be granted.